UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PEARSON EDUCATION, INC.; CENGAGE LEARNING, INC.; and BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC, D/B/A MACMILLAN HIGHER EDUCATION,<br><br>        Plaintiffs,<br><br>  v.<br><br>BOUNDLESS LEARNING INC. and Does 1-10,<br><br>        Defendants. | Case No. 1:12-cv-01986-ALC |

## COMPLAINT

Plaintiffs Pearson Education, Inc. ("Pearson"), Cengage Learning, Inc. ("Cengage"), and Bedford, Freeman & Worth Publishing Group, LLC d/b/a MacMillan Higher Education ("MacMillan Higher Ed") (collectively, "Plaintiffs"), for their Complaint against Defendant Boundless Learning Inc. ("Boundless" or "Defendant") and Does 1-10 ("Does"), allege, on personal knowledge as to matters relating to themselves, and on information and belief as to all other matters, as follows:

## NATURE OF ACTION

1.     Plaintiffs are among the most well-known and respected educational publishers in the world.  Working with authors who are both experts in their fields of study and teachers, Plaintiffs create and publish extremely valuable and highly-regarded textbooks.  The process of creating textbooks does not stop when a textbook is first released.  The Plaintiffs, working with their authors, continuously edit the material they include in their textbooks and hone the manner

in which they teach it for subsequent editions. With this process, textbooks continually change and improve, ultimately becoming the highly-evolved pedagogical tools that they are today.

2.      Defendant is a recently-founded Internet company with a web site located at www.boundlessnow.com (the "Boundless Web Site"). Defendant is in the business of distributing online textbooks that it claims serve as "substitutes" for Plaintiffs' textbooks. Rather than produce its own textbooks, however, Defendant steals the creative expression of others, willfully and blatantly violating Plaintiffs' intellectual property rights in several of their highest profile, signature textbooks. Defendant exploits and profits from Plaintiffs' successful textbooks by making and distributing the free "Boundless Version" of those books, in the hope that it can later monetize the user base that it draws to its Boundless Web Site. In short, Defendant seeks to build its business upon Plaintiffs' intellectual property rights.

3.      The Boundless textbooks copy the distinctive selection, arrangement, and presentation of Plaintiffs' textbooks, along with other original text, imagery, and protected expression of Plaintiffs and their authors, all in violation of the Copyright Act. Defendant markets its unauthorized Boundless editions of Plaintiffs' textbooks in a false or misleading manner in violation of the Lanham Act. Defendant tries to cloak its actions in a veil of legitimacy by pretending that it simply distributes "open source educational content." Yet in reality, Defendant operates a business built on brazen infringement that whittles away at Plaintiffs' and their authors' incentive to create and perfect their works, misleads students, and has a corrosive effect on learning.

4.      Notwithstanding whatever use it claims to make of "open source educational content," Defendant distributes "replacement textbooks" that are created from, based upon, and overwhelmingly similar to Plaintiffs' textbooks. Defendant generates these "replacement

textbooks" by hiring individuals to copy and paraphrase from Plaintiffs' textbooks.  Defendant boasts that they copy the precise selection, structure, organization and depth of coverage of Plaintiffs' textbooks and then map-in substitute text, right down to duplicating Plaintiffs' pagination.  Defendant has taken hundreds of topics, sub-topics, and sub-sub-topics that comprise Plaintiffs' textbooks and copied them into the Boundless texts, even presenting them in the same order, and keying their placement to Plaintiffs' actual pagination.  Defendant has engaged in similar copying or paraphrasing with respect to the substance of hundreds of photographs, illustration, captions, and other original aspects of Plaintiffs' textbooks.

5.      Whether in the lecture hall or in a textbook, anyone is obviously free to teach the subjects biology, economics or psychology, and can do so using, creating and refining the pedagogical materials they think best, whether consisting of "open source educational content" or otherwise.  But by making unauthorized "shadow-versions" of Plaintiffs' copyrighted works, Defendant teaches only the age-old business model of theft.

6.      Notwithstanding its spin about being on the cutting edge, Boundless gets an "F" in originality for deliberately copying the creative, scholarly and aesthetic expression of Plaintiffs and their authors.  Plaintiffs and their authors express countless creative choices as they write, publish and continuously revise and improve their textbooks over many years.  Different books, and indeed even different editions of a single book title, resolve these choices in different ways.  Those differences reflect, among other things, how authors and editors express their developing vision and expertise, along with their interpretation of years and in some cases decades of feedback from reviewers and users in the field, and changes and developments in knowledge respecting the subject areas.

7.     Defendant Boundless chose to bypass the creative process necessary to produce a legitimate textbook of its own by simply copying the original selection, arrangement and other protected expression that is the essence of Plaintiffs' textbooks.   Such infringement by Defendant, along with its confusing and misleading marketing, damages Plaintiffs' businesses and investments in their copyrighted works.   Accordingly, Plaintiffs hereby bring these claims for injunctive relief and damages, in order to stop the infringing activity and to seek compensation for the violation of their intellectual property rights.

## THE PARTIES

8.     Plaintiff Pearson is a Delaware corporation with its principal place of business located at One Lake Street, Upper Saddle River, New Jersey 07458.   Pearson is one of the world's leading learning companies, with global reach and market-leading businesses in education, business information and consumer publishing.   Along with publishing some of the world's great textbooks under such well-known imprints as "Prentice Hall,"   "Longman," and "Addison Wesley," Pearson also provides innovative print and digital education materials, including personalized learning programs; education services such as custom publishing and international educational and vocational training; and digital and distance learning through various online platforms.

9.     Plaintiff Cengage, formerly Thomson Learning, Inc., is a Delaware corporation with its principal place of business located at 200 First Stamford Place, 4th Floor, Stamford, Connecticut 06902. Cengage is among the world's largest providers of tailored learning solutions.   In the academic marketplace, Cengage serves secondary, post-secondary and graduate-level students, teachers, and learning institutions in both traditional and distance

learning environments.  Cengage products and services are sold throughout the world, through direct channels and via a worldwide network of distributors.

10.      Plaintiff Macmillan Higher Ed is a New York limited liability company with its principal place of business at 41 Madison Avenue, New York, New York 10010.  Macmillan Higher Ed is a leading publisher of textbooks, educational content and resources used by colleges and universities in the United States and worldwide.  Macmillan Higher Ed's imprints include "Bedford/St. Martins," "W.H. Freeman and Company," and "Worth Publishers." Macmillan Higher Ed is a part of Macmillan, a group of America's leading book publishers and educational content companies.

11.      Defendant Boundless is a Delaware corporation with its principal place of business located at 164 Kneeland Street, Boston, Massachusetts 02111.

12.      Defendant Does 1 through 10 are fictitious names used to refer to certain individuals or entities whose true identities are not currently known to Plaintiffs.  Once Plaintiffs ascertain their identities, Plaintiffs will seek leave of the Court to amend the Complaint to include such individuals or entities as named defendants.  The Doe defendants are the individuals and/or entities responsible for the creation and distribution of the "Boundless Version" of Plaintiffs' textbooks.  The Doe defendants also include those individuals and/or entities that financially benefit from the infringement of Plaintiffs' copyrighted works and fail to exercise their right and ability to control the infringement, and/or that have knowledge of the infringement of Plaintiffs' copyrighted works and encourage or materially contribute to it.  Each Doe Defendant acted in concert with, as agent or representative for, or at the request or on the behalf of Defendant Boundless.  Thus, the allegations of wrongful conduct by Defendant Boundless set forth herein are also applicable to and alleged against each Doe Defendant.

## JURISDICTION AND VENUE

13.     This is an action arising under the Copyright Act, 17 U.S.C. § 101, *et al.*, and under the Lanham Act § 43, 15 U.S.C. § 1125(a).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.     This Court has personal jurisdiction over Defendant Boundless because it does systematic and continuous business in New York, and has performed acts directly aimed at and causing harm in New York which give rise to this Complaint, including by distributing the infringing copies of its "replacement textbooks," also known as the "Boundless Version" of Plaintiffs' textbooks, into New York.  This Court has personal jurisdiction over the Doe Defendants because in the course of making and distributing the infringing "Boundless Versions" of Plaintiffs' copyrighted works, they have performed acts directly aimed at New York and caused harm in New York.

15.     Venue is proper in this district under 28 U.S.C. §§ 1391.

## GENERAL ALLEGATIONS

### Plaintiffs' Businesses

16.     Plaintiffs each publish a variety of educational textbooks, among other works. Their textbooks are used worldwide at educational institutions and in other learning environments.

17.     Plaintiffs each invest substantial sums of money, time, expertise, and talent to develop their textbooks and subsequent editions of those textbooks.  Plaintiffs, for example, work closely with their authors to select, plan, create, write, edit, organize, and arrange the content within each textbook, including as to subject matter, text, photographs, illustrations, and other areas.  Each new edition adopts and incorporates not only changes to the underlying

substantive content, but also adopts new and improved pedagogy to teach the substantive content. Of course, Plaintiffs also pay the author advances and royalties that underwrite the creation of these extremely beneficial works of pedagogy.

18. Plaintiffs each invest significant resources annually in the worldwide advertisement and promotion of their goods and services. Plaintiffs and/or their predecessors have invested decades of effort in building a reputation of superior quality in the publishing industry.

19. In writing and updating and revising their textbooks, Plaintiffs and their authors repeatedly decide, what material to include, in what order, and in what manner to present it. Not only do they decide the general topics to discuss in their books and the order of those topics, but within each topic they must decide what sub-topics and sub-sub-topics to include, and in what order and at what depth those sub-topics and sub-sub-topics should be discussed. This distinctive selection, coordination, arrangement and emphasis-of-content within their textbooks is the direct result of subjective choices made by the authors and editors, leveraging *inter alia* their many years of teaching and comprehensive expertise in the material, as well as their considerable understanding of the needs of the scholastic community. The text, illustrations, problems, and questions that Plaintiffs and their authors create for and select to use in their books are also Plaintiffs' original creative work

20. In their textbooks, Plaintiffs make extensive use of figures, photographs, diagrams and other carefully chosen illustrative art to exemplify and communicate the matters taught within the textbooks. Such figures, photographs, diagrams and other art is yet another aspect of the myriad creative decisions that Plaintiffs and their authors make to express their unique views

and understandings of how to best teach the material, illustrate and reinforce difficult concepts, test the reader's comprehension, and engage and inspire.

21.     The choices made by Plaintiffs and their authors, including as to the works identified below, are by no means basic, mechanical, routine, obvious, standard, or necessary for textbooks on those subjects.  Indeed, those many choices represent expressions of creativity of the highest order, and the end-result of those choices reflects Plaintiffs' and their authors' expression of their unique and highest pedagogical aspirations.

22.     The revenues from Plaintiffs' sales of textbooks are important to their financial health.  Among other things, a substantial decline in revenue from textbook sales could cause Plaintiffs to cease publication and/or reinvestment in one or more deserving books.  This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific and educational progress by making it more difficult to publish deserving works.

**Plaintiff Pearson**

23.     Plaintiff Pearson is the copyright owner and publisher of one of the world's best-known textbooks entitled, *Biology*, authored by Neil Campbell and Jane Reece, among others.  It is commonly referred to as Campbell's *Biology*.

24.     Dr. Campbell, who passed away in 2004 to great mourning by and universal acknowledgement within the academic community of the accomplishment represented by his innovative *Biology* textbook, was a scientist who had taught biology at the collegiate level for more than thirty years.  He earned his M.A. in Zoology from University of California, Los Angeles, and his Ph.D. in Plant Biology from the University of California, Riverside.  It is safe to say that Campbell's *Biology* represents the culmination of Professor Campbell's academic career.  Dr. Reece, who had worked with Professor Campbell for years as a co-author before his

death, is a scientist with an A.B. in Biology from Harvard University, an M.S. in Microbiology from Rutgers University, and a Ph.D. in Bacteriology from the University of California, Berkeley.  She has also worked as a post-doctoral fellow in genetics at Stanford University, and serves as the primary author on the current editions of Campbell's *Biology*.

25.     First published in 1987, the *Biology* textbook is now in its tenth edition.  Believed to be the most successful science college textbook in the world, it is estimated to have been used by over 6.5 million students.  Some sixty percent of Americans under the age of forty in the fields of biology, biotechnology, biology education, medicine, and other health careers began their college studies with the *Biology* textbook.  Researching, writing and updating the *Biology* textbook has involved herculean creative input, including as to the textual content, design, art, figures, and photographs.

26.     Campbell's *Biology* is organized into eight (8) separate units.  Those units are then segregated into fifty-six (56) individual chapters.  Within the fifty-six (56) chapters, the textbook segregates into two hundred sixty-two (262) key concepts.  Within those key concept sections, there are well over one hundred photographs and figures.  Each photograph and figure is selected and placed to help elucidate the key concepts around it.  In each key concept section, the textbook emphasizes certain key terms by using a bold typeface for them.  These key terms are selected to single out certain words and concepts from within the vast field that is the subject of biology.  At the end of each chapter, the textbook contains test questions to help students measure their understanding of the material in the chapter.

27.     Plaintiff Pearson has duly registered with the United States Copyright Office its copyright in the *Biology* book, both for the initial book and as to subsequent editions.  The most recent registration is as follows:  U.S. Copyright Registration   Number 7-304-625 (9th edition).

**Plaintiff Cengage**

28.     Plaintiff Cengage is the copyright owner and publisher of a textbook entitled, *Principles of Economics*, authored by N. Gregory Mankiw.  It is sometimes referred to as Mankiw's *Principles of Economics*.

29.     Dr. Mankiw is a professor of economics at Harvard University.  He earned his Bachelor of Arts in economics from Princeton University, and his Ph.D. at the Massachusetts Institute of Technology.  He began teaching at Harvard University in 1985.  In May 2003, President George W. Bush appointed Dr. Mankiw as the Chairman of the Council of Economic Advisors, on which he served until 2005.  He currently serves as an economic advisor to presidential candidate Mitt Romney.  The Research Papers in Economics project has ranked Dr. Mankiw as the 25th most influential economist in the world based on his academic contributions.

30.     Mankiw's *Principles of Economics* was first published in 1998.  Since that time, the textbook has sold more than one million copies and has been translated into 17 languages. *Principles of Economics*, Sixth Edition, became a best seller after its introduction and is believed to be the most popular and widely used text in the economics classroom.  The sixth edition features a strong revision of content in all thirty-six chapters.  Dozens of new applications emphasize the real-world relevance of economics for today's students through interesting news articles, realistic case studies, and engaging problems.  In addition to teaching the fundamental principles of economics, a number of the chapters describe Professor Mankiw's considered opinions and philosophies of those fundamental principles.

31.     Plaintiff Cengage has duly registered with the United States Copyright Office its copyright in the *Principles of Economics* book, both for the initial textbook and as to subsequent

editions.  The most recent registration is as follows:  U.S. Copyright Registration Number TX 7-349-956 (9th edition), registered March 23, 2011.

**Plaintiff Macmillan Higher Ed**

32.    Plaintiff Macmillan Higher Ed is the copyright owner and publisher of a textbook entitled, *Psychology*, authored by David G. Myers.  It is commonly referred to as Myers' *Psychology*.

33.    Dr. Myers has taught or written about psychology at the collegiate level for more than forty years.  For many years, he the John Dirk Werkman Professor of Psychology at Hope College in Michigan.  He earned his Bachelor of Arts in chemistry from Whitworth College, and his M.A. and Ph.D. in Psychology from the University of Iowa.  Dr. Myers has received grants from the National Science Foundation, among others. Dr. Myers has authored seventeen books.  His research has been published in more than two dozen scientific periodicals, including *Science*, *American Scientist*, *Psychological Science*, *Psychonomic Science*, *Journal of Psychology*, *Journal of Social Psychology*, *British Journal of Social and Clinical Psychology*, and the *American Psychologist*, among others.

34.    Myers' *Psychology* was first published in 1986.  It is currently studied by students at hundreds of colleges and universities.  It has been translated into twelve languages, and is used worldwide.  Each new edition of the textbook is used as a fresh opportunity to communicate psychology's enduring principles and pivotal research in terms that captivate students and connect with their lives.  The Ninth Edition adjusted its approach to make it more accessible for teaching by refocusing and combining chapters in order to streamline its presentation of the issues.  The ninth edition contains sixteen (16) chapters (as well as a prologue and appendices), eighty-four (84) sub-chapters, and two hundred sixty-five (265) sub sub-chapters; as well as

hundreds of images and figures.   The textbook also adopted a new inquiry-based pedagogy whereby it includes learning objectives and questions for the students in order to enhance a student's mastery of the subject.

35.     Plaintiff Macmillan Higher Ed has duly registered with the United States Copyright Office its copyright in the *Psychology* book, both for the initial textbook and as to subsequent editions.   The most recent registrations are for the 9th edition, TX 7-068-827, and the 10th edition, filed January 24, 2012.

**Defendant and Its Infringing Conduct**

36.     Defendant is a for-profit company founded in 2010 by three individuals, Ariel Diaz, Aaron White, and Brian Balfour.   Referred to on the Boundless Web Site as "technology entrepreneurs," these individuals do not appear to have any significant background in education, the publishing business, or as to the subjects in which they publish Boundless Versions of "Plaintiffs' Authentic Works."   (As used herein, the term "Plaintiffs' Authentic Works" refers to the three titles referred to in the preceding paragraphs.)

37.     Defendant does not develop its own textbooks.   Defendant's business consists of distributing various textbooks that it proudly styles the "Boundless Versions" of Plaintiffs' Authentic Works.   Defendant uses these unauthorized editions of Plaintiffs' textbooks to divert Plaintiffs' respective customers to itself.   Defendant has raised significant venture capital funding to finance its copyright infringement business.   This funding has financed the copying and distribution of the Boundless Versions of Plaintiffs' Authentic Works, which, in turn, Defendant uses to draw in potential customers for pay services.

38.     Defendant has "created" unauthorized editions of the following textbooks, among others: *Biology* 9th Edition by Neil Campbell; *Principles of Economics* 6th Edition by N.

Gregory Mankiw; and *Psychology* 9th Edition by David Myers.  It has indicated that more titles are on the way.

39.     The Boundless Versions of Plaintiffs' Authentic Works derive whatever value they have wholly from Plaintiffs' Authentic Works.

40.     Defendant advertises its free textbooks as "alternatives" and "replacements" to "expensive assigned textbooks."  When Defendant explains the purpose of what it provides, it indicates "[y]ou can choose to complement the original or use only the Boundless version." Defendant's marketing explains that the Boundless Version will not read "word-for-word the same" as Plaintiffs' Authentic Works but that the Boundless Version "covers 100% of the same concepts in the same order and depth as your assigned text."  Defendant Boundless goes so far as to advertize that it can "instantly show you all of the concepts" from specific pages your professor might assign.  Defendant Boundless boasts that their "Boundless text is mapped to [Plaintiffs' Authentic Version.]"  With respect to practice problems from Plaintiffs' Authentic Works, Defendant Boundless makes clear that the "Boundless text contains links to other websites that have the questions and/or solutions to your assigned text."

41.     Defendant has copied or paraphrased substantial portions of Plaintiffs' Authentic Works.  Defendant Boundless does not hide this fact.  On the contrary, it openly brags that it is making and distributing textbooks that are based on, prepared from, and substantially similar to Plaintiffs' leading textbooks.

42.     Defendant overtly touts that it copied "100%" of what Plaintiffs and their authors selected to include in the book and how they chose to arrange it.  Going even further, Defendant expressly claims that it has calculated the actual depth of coverage that Plaintiffs have accorded each topic, boasting that its copying replicates Plaintiffs' depth-of-coverage, topic-by-topic.

Defendant explained that it does this by "curating" academic content from various universities (which it refers to as Open Educational Resources) and then "map[ping] this content to cover 100% of the same material in the same order and depth" as Plaintiffs' textbooks.

43.     In its online marketing, Defendant visually depicts its copying of the original selection, coordination and arrangement from Plaintiffs' Authentic Works, as follows:



**Align     The     Content     To     Your     Class.** Boundless aligns the content to your class based on your assigned text creating the Boundless alternative. You don't have to adopt a new text since the Boundless alternative covers the same content in the same order as the text you are already using.

http://www.boundlessnow.com/professors

44.     Defendant has also engaged in widespread copying of Plaintiffs' original expression concerning photographs, illustrations, and figures.  Throughout Plaintiffs Authentic Works, there are photographs, illustrations and figures that Plaintiffs' selected, arranged and even created to emphasize, test and teach the text within the book.  Overwhelmingly, in its textbooks Defendant has opted to include photographs where Plaintiffs' Authentic Works do and has also opted to include photographs which mimic or paraphrase the photographs in Plaintiffs' textbooks.  The same is true for figures and illustrations.  The copying is so blatant that Defendant has gone so far as to replicate the numbering taxonomy for illustrations used by one of the Plaintiffs.

45.     An example of the obvious nature of Defendant's photographic paraphrasing can be found in Chapter 8 of the authentic version of Campbell's *Biology* where Plaintiff Pearson and its authors describe the First and Second Laws of Thermodynamics.  To exemplify those laws, Plaintiff Pearson and its authors included two photographs, one of a bear catching and

eating a fish, and another of a bear running. Plaintiff Pearson and its authors could have used any one of a universe of possible photographic subjects to demonstrate the laws of thermodynamics, but, based on the manner in which they wished to express their aesthetic and scholarly judgments, they opted for the bear engaged in these activities. In Chapter 8 of the Boundless Version of Cambell's *Biology*, Defendant also discusses the first and second laws of thermodynamics. Defendant also includes two photographs to exemplify these laws, but instead of basing its selection and ordering on their own aesthetic and scholarly judgments, the two photographs Defendant includes are also of a bear eating a fish and a bear running, reflecting only the previously made creative, scholarly and aesthetic judgments of the authors and editors of Campbell's *Biology*. Defendant has copied such subjective, creative details that reflect Plaintiffs' and their authors' original expression on a widespread basis, and in a number of ways, rather than developing its own creative material (and of course those copied selections and paraphrased photographs are numbered identically to their numbering in Campbell).

46.     By way of further example, in the authentic version of Myers' *Psychology*, the sub-topic of "Sleep Disorders" could be illustrated in myriad ways, and using any of a number of disorders. Plaintiff Macmillan Higher Ed and its authors use the disorder of sleep apnea, and a photograph of Johannes Brahms, with a caption, "Cranky, overweight, and nap-prone, Johannes Brahms exhibited common symptoms of sleep apnea." In the Boundless Version, Defendant copied protected expression from Plaintiff Macmillan Higher Ed's copyrighted work. Defendant illustrated the sub-topic by also using the disorder of sleep apnea, also using a photograph of Brahms, and also using a caption that mentioned his sleep apnea and being overweight. The copying and paraphrasing in Defendant's Boundless Versions is undeniable and pervasive.

15

47.     In some instances, Defendant chose not to include problem and question sets directly into the Boundless Versions.  At the same time, Defendant also chose to do indirectly that which it may not do directly.  Namely, Defendant proceeded to induce and encourage others to copy the problems and answers from other infringing sources without authorization.  A pop-up on the "How it Works" page of the Boundless Web Site states, among other things, that the text of its books "contains links to other websites that have the questions and/or solutions to your assigned text."

48.     To add insult to injury, Defendant's marketing is confusing, misleading and false.  Defendant markets its books as "free Boundless Version" to Plaintiffs' Authentic Works.  Defendant has even included on the Boundless Web Site an image of the Plaintiffs' textbooks.  These statements and images make it appear that the Boundless Version is associated with Plaintiffs and Plaintiffs' Authentic Works, and cause confusion over the origin or source of Defendant's goods or services.  They also convey that Defendant is authorized to produce its edition of the textbooks published by Plaintiffs, even though it is not authorized to do so.  Consumers are further deceived about the nature, characteristics and qualities of the "Boundless Version," led to believe that it will be equivalent to or an authorized version of Plaintiffs' Authentic Works, when it is not.

## FIRST CLAIM FOR RELIEF
### Direct Copyright Infringement - 17 U.S.C. §§ 106 (2)
### Unauthorized Derivative Work

49.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

50.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*, and they have been duly

registered by Plaintiffs with the United States Copyright Office.  At all relevant times, Plaintiffs have been and still are the owners of all rights, title and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendant.

51.     As detailed above, Defendant, without permission or consent of Plaintiffs, has prepared unauthorized derivative works based on Plaintiffs' Authentic Works.  Such activity constitutes infringement of Plaintiffs' registered copyrights and exclusive rights under copyright in violation of the Copyright Act, 17 U.S.C. §§ 106(2) and 501.

52.     As a result of Defendant's unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.  Defendant's unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious and willful.

53.     Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless Defendant is restrained by this Court from continuing its infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendant from further infringement.

### SECOND CLAIM FOR RELIEF
**Direct Copyright Infringement - 17 U.S.C. §§ 106(1) and (3)**
**Unauthorized Reproduction and Distribution**

54.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

55.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, et seq., and they have been duly registered by Plaintiffs with the United States Copyright Office.  At all relevant times, Plaintiffs

have been and still are the owners of all rights, title and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendant.

56.     As detailed above, Defendant, without permission or consent of Plaintiffs, makes unauthorized reproductions and distributions of Plaintiffs' Authentic Works.  Such reproduction and distribution constitutes infringement of Plaintiffs' registered copyrights and exclusive rights under copyright in violation of the Copyright Act, 17 U.S.C. §§ 106(1), 106(3), and 501.

57.     As a result of Defendant's unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.  Defendant's unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious and willful.

58.     Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless Defendant is restrained by this Court from continuing its infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendant from further infringement.

### THIRD CLAIM FOR RELIEF
**Secondary Copyright Infringement**

59.     Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

60.     Defendant is liable as a contributory copyright infringer for the infringing acts of those persons tasked by it with preparing and distributing derivative works based on Plaintiffs' Authentic Works.  Defendant knows or has reason to know of the above-described infringement of Plaintiffs' Authentic Works.  Defendant knowingly causes, enables, facilitates, encourages

and otherwise materially contributes to this unauthorized copying and creation of derivative works.

61.     Defendant is vicariously liable for the infringing acts of users of the Boundless Web Site, along with the infringing acts of those persons tasked by it with preparing and distributing derivative works based on Plaintiffs' Authentic Works.  Defendant has the right and ability to supervise and control the infringing activities that occur through and as a result of the Boundless Web Site and at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights, including but not limited to Plaintiffs' Authentic Works. Defendant has refused to take any meaningful action to prevent such direct infringement of Plaintiffs' copyrighted works, including but not limited to Plaintiffs' Authentic Works, and is therefore liable for it.

62.     As a result of Defendant's unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.  Defendant's unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious and willful.

63.     Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless Defendant is restrained by this Court from continuing its infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendant from further infringement.

## FOURTH CLAIM FOR RELIEF
### 15 U.S.C. § 1125(a)(1)(A)
### Unfair Competition and False Designation of Origin

64.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

65.     Through the actions described above, including calling its textbooks "versions" of Plaintiffs' Authentic Works and using images of Plaintiffs' Authentic Works in its advertising, Defendant Boundless is knowingly and intentionally misrepresenting and falsely designating to the general public the affiliation, connection, association, origin, or source of the Boundless books, which causes confusion on these issues among the general public and constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

66.     Defendant undertook its conduct with the intent to trade on the reputation and goodwill of Plaintiffs and their respective textbooks.

67.     As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered irreparable harm.  Unless Defendant is restrained from its unlawful activities, Plaintiffs will continue to be irreparably harmed.  Plaintiffs' remedy at law is inadequate to compensate them for injuries inflicted and threatened by Defendant.

68.     Because of Defendant's conduct in violation of Section 43(a) of the Lanham Act, Publishers are being injured and damaged, and are entitled to recover damages, Defendant's profits, and costs under 15 U.S.C. §1117(a).

## FIFTH CLAIM FOR RELIEF
### 15 U.S.C. § 1125(a)(1)(B)
### False Advertising

69.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

70.     Through the actions described above, including calling its textbooks "versions" of Plaintiffs' Authentic Works and using images of Plaintiffs' Authentic Works in its advertising, Defendant is knowingly and intentionally misrepresenting the nature, characteristics, and qualities of the textbooks it offers, so as to create a likelihood of confusion by the public as to the

nature, characteristics and qualities of its books.  These acts constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

71.     Defendant undertook its conduct with the intent to trade on the reputation and goodwill of Plaintiffs and their respective textbooks.

72.     As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered irreparable harm.  Unless Defendant Boundless is restrained from further, Plaintiffs will continue to be irreparably harmed.  Plaintiffs' remedy at law is inadequate to compensate them for injuries inflicted and threatened by Defendant.

73.     Because of Defendant's conduct in violation of Section 43(a) of the Lanham Act, Publishers are being injured and damaged, and are entitled to recover damages, Defendant's profits, and costs under 15 U.S.C. §1117(a).

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.     Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2.     An accounting and disgorgement of Defendant's profits, gains, and advantages realized from its unlawful conduct;

3.     That Defendant be required to pay to Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendant's unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

4.     An order enjoining Defendant from further infringing upon Plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

5.     That Defendant be required to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendant's unlawful acts as alleged above, including statutory

damages or treble damages, pursuant to 15 U.S.C. § 1117;

6.      That Defendant be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, Plaintiffs' respective copyrights;

7.      An order preventing the further unfairly competitive or otherwise unlawful acts by Defendant complained of herein.

8.      Prejudgment interest at the applicable rate;

9.      Attorneys' fees and costs of suit; and

10.     Such other and further relief as the Court deems proper.


Respectfully submitted,

**/s/**

_____
Matthew J. Oppenheim (NY. Bar No. 4314605)
Scott A. Zebrak
Oppenheim + Zebrak, LLP
1325 G Street, NW
Suite 500
Washington, DC  20005

Counsel for Plaintiffs

Dated:  March 16, 2012