D4ILPEAC                        Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

PEARSON EDUCATION, INC., et
al.,

                Plaintiffs,

           v.                              12 CV 1986 (ALC)

BOUNDLESS LEARNING INC., et
al.,

                Defendants.

------------------------------x
                                      New York, N.Y.
                                      April 18, 2013
                                      11:24 a.m.

Before:

                 HON. ANDREW L. CARTER, JR.,

                                      District Judge

                          APPEARANCES

OPPENHEIM & ZEBRAK, LLP
     Attorneys for Plaintiffs
BY:  MATTHEW OPPENHEIM
     SCOTT ZEBRAK
     MICHELE H. MURPHY

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
     Attorneys for Defendants
BY:  ROGER L. ZISSU
     JASON JONES

D4ILPEAC                              Conference

1              (Case called)

2              THE COURT:  Good morning.  I've read the parties'

3    submissions regarding the premotion conference.  I note that

4    the parties met not too long ago with Magistrate Judge Fox and

5    worked out some other discovery issues.  It appears to me from

6    the motion that's being anticipated here that this shouldn't

7    have any effect on the discovery schedule, but let me hear from

8    the parties if they have any disagreement with that.

9              MR. OPPENHEIM:  Your Honor, I assume that implicit in

10   your question is the assumption that the counterclaims would

11   come in to the case?

12             THE COURT:  Well, let me hear from you in terms of how

13   you think this might affect discovery.

14             MR. OPPENHEIM:  Okay, your Honor.  If the Court were

15   to rule that the counterclaims should come in, which we'd like

16   to have an opportunity to discuss with the Court, it's obvious,

17   preliminary views on the issue which respectfully we disagree

18   with, but should the counterclaims come in, we would have to

19   significantly expand the discovery schedule.  And let me

20   address that a little bit, your Honor.

21             These cases are at their core simple copyright

22   infringement cases based on selection, coordination, and

23   arrangement claims.  And the legal principles are not complex,

24   and I suspect that we won't have a lot, I hope we won't have a

25   lot of disagreement on what the legal principles are.

1          The factual background that we must present to the

2     Court in order for it to make a determination on those legal

3     principles, however, is deep.  And by way of example, so there

4     are three books at issue in the case.  We brought them because

5     it really is useful to get a sense for the volume and heft of

6     what we're talking about in this case.  For each of these

7     books, what we need do as plaintiffs is demonstrate that the

8     selection, coordination, and arrangement of the Boundless books

9     is the same as the selection, coordination, and arrangement of

10    these books.

11          Now, we could, I suppose, your Honor, simply present

12    to you the two table of contents, which look almost exactly the

13    same.  But no doubt the defendants would say, well, that's just

14    the table of contents.  And so we have to go beyond that to our

15    presentation to the Court.  And so in putting together our

16    analysis of the comparison, we've had to actually look at the

17    substance of every chapter, subchapter, and sub-subchapter and

18    compare literally page for page each one of these books to each

19    one of the Boundless books.

20          This is not a task that can be done by some

21    administrative person.  This is an academic who is familiar

22    with the subject matter has to actually do this analysis.  And

23    we have now done it with respect to these three books.  It has

24    taken us months, your Honor.  It is over three months in work

25    by literally teams of academics to do the analysis we need to

D4ILPEAC                          Conference

1    do.

2              On top of that, because the defense's claim in this

3    case is that there is no copyrightable content in the

4    selection, coordination, and arrangement of these books, we've

5    had to compare these books to other competitive books in the

6    field to demonstrate that they are in fact different.  And we

7    will present to the Court expert reports showing that.

8              So all told, from our side in the presentation to the

9    Court, we will be putting forward at least six expert reports

10   showing these comparisons.  If the additional works come in

11   that Boundless seeks to bring in to the case -- and assuming we

12   figure out what those are because it's very vague in the

13   complaint.  It talks about currently available, not sure what

14   that is.  We don't have them.  We haven't reviewed them -- but

15   if they come in, you're now talking about taking this very

16   lengthy analysis which we've done for each of these and doing

17   it six more times because it's, right, it's two more books on

18   each one of these.

19             THE COURT:  Right.

20             MR. OPPENHEIM:  So that is a very extensive project

21   and that, leaving aside the discovery project, just the

22   analysis will take quite some time.

23             Turning to specifically to the discovery, your Honor,

24   we promulgated our original discovery in September of 2012, the

25   written discovery, your Honor.  We are just I think at the kind

D4ILPEAC                        Conference

1    of tail end of getting the responses to the written discovery

2    now.  So it's taken in excess of five months, six months to get

3    the written discovery done.

4         We are moving forward with depositions in the next two

5    weeks of the principal authors -- author is the wrong word --

6    administrative managers for Boundless who have authored the

7    Boundless texts.  Those will happen over the course of the next

8    two weeks.  That's just four of the depositions.  Those four

9    individuals, however, as we understand it, were not involved at

10   all in any of the subsequent versions of the six new Boundless

11   works.

12        So if the counterclaims come in, we'll need, you know,

13   a fairly significant amount of time for document discovery

14   because none of the document discovery has looked at the new

15   Boundless works.  And there will be many additional witnesses.

16   And we don't know how many because at this point, we don't know

17   how many people were involved in creating them or the process

18   of creating them.

19        In this respect, your Honor, to the extent that the

20   Court is inclined to allow the counterclaims in, we would ask

21   the Court to consider staging the case.  The current schedule

22   that the magistrate has just set --

23        THE COURT:  Let me just -- I haven't prejudged the

24   motion yet, so I haven't made a determination.  I'm not leaning

25   in particular either way in terms of whether or not the

1    counterclaims are going to come in.

2              I guess what I was primarily concerned about is the

3    discovery schedule that has recently been altered to affect the

4    current discovery that is contemplated by the parties.  It

5    seems that this motion isn't going to have any effect on that

6    since the individuals that you're talking about deposing don't

7    really have anything to do with these counterclaims or is that

8    incorrect?  That's what I'm trying to get at.

9              MR. OPPENHEIM:  Yeah.  So with respect to these four

10   individuals, I believe, your Honor, we can go forward.

11             However, all of the other depositions of, for

12   instance, the principals and founders of Boundless would have

13   to really be put on hold until we finish document discovery on

14   all of the new books.  And all the expert discovery would need

15   to be put off because to the extent that the experts are now

16   going to -- and obviously we don't know how we would deal with

17   this, nor do we know how defendants would deal with this -- but

18   to the extent that the same experts would be used to cover the

19   new works, we wouldn't, you know, unless we stage this matter,

20   as we would like to, we would obviously want to defer any

21   expert discovery.

22             THE COURT:  Okay.  Thank you.

23             Defense counsel.

24             MR. ZISSU:  Yes, your Honor.  I don't think the

25   schedule would be affected very much basically because

1    discovery in the case has included the subject of the

2    counterclaims, these new books that began distribution in

3    February of this year.  All of their discovery requests to us

4    have covered those books, specifically, along with the original

5    books.

6         Our document production will be completed with the

7    last production today.  Their discovery included passwords to

8    our client's, all of our client's materials online, and some of

9    those are available anyway.  We have produced documents about

10   the creation of these works, the authors of these works;

11   everything has been completed in that regard.  Drafts have been

12   produced and so forth.  And another aspect of it, the case is

13   going to come down to a question of law based on these books

14   and what's the originality.

15        And by the way, your Honor, we don't say that there's

16   no protection for the selection and arrangement in any of the

17   plaintiff's books.  What we say is the material similarities

18   between the works don't relate to what's protectable in their

19   selection and arrangement, and that's a major distinction in

20   the case.

21        And in their letter to us responding about these

22   counterclaims and whether they would consent to their being

23   brought in and whether we would have to file them, they really

24   said two devastating sentences on the subject.  They said we

25   have little doubt that the Court's resolution of plaintiff's

D4ILPEAC                    Conference

claims will inform your client's current and future business

practices.  But even more importantly they went on to say,

accordingly, your client's concerns about a cloud of

uncertainty will be addressed by this case moving forward

without undue delay, without undue delay, your Honor, or

distraction.

          And this concedes three things.  They admit there is a

cloud of uncertainty, and they say your Honor will address that

in this case.  Well, I don't know how your Honor is going to

address it if it's not in the case briefed and argued by the

parties.  And they also say will not delay or involve

distraction.  Now, we do think they may need maybe some

additional preparation, but not much is the answer to your

Honor's question.

          THE COURT:  Okay.

          MR. OPPENHEIM:  Your Honor, may I respond briefly.

          First of all, I just can't tell you how much I

disagree with the statement that the current discovery covers

the new works.  That's just simply not true.  We don't even

have copies of these books.  To say, well, you have passwords

to the site, Mr. Zissu himself explained to us these sites, the

content -- his words -- is constantly evolving.  So I don't

even know what we would be analyzing, first of all.

          We don't have any Rule 26 disclosures that include the

witnesses for the defendants who would be responsible.  No

D4ILPEAC                         Conference

third party subpoenas have been issued to those witnesses who

were likely, if it were as with the original books, third party

contractors who were doing the work, in order to get the

documents from them.  We don't have the processes that the

defendants use to create the books.  I could go on and on, your

Honor, but it's just simply not true that the discovery has

occurred.  No. 1.

No. 2, we can get into the Article III issue, your

Honor, and I'd like to address that.  But the notion that the

letter that we sent telling the defendants that -- and I

believe your Honor has a copy of that letter -- saying we've

not reviewed these works, we've not asserted claims on them, or

said anything about them, that they can use that as the hook to

suggest that there's a real and immediate threat, as they need

to prove in order to have Article III jurisdiction here, it

cannot be.

THE COURT:  Okay.  All right.  Let's do this.  Let's

give the plaintiff an opportunity to file their motion to

dismiss the counterclaims.  How soon can you file that motion?

Because I would like to move this along as expeditiously as

possible to kind of get resolution on this because it certainly

may, it seems that both sides agree this will certainly inform

the breadth of discovery in this case, whether or not we are

having to reopen discovery or supplement discovery, whatever

the case may be.

D4ILPEAC                        Conference

1          Can the plaintiff file the motion by May 10, does that

2     give you enough time?  If not, I can give you another week if

3     you want that.  That's fine.

4          MR. OPPENHEIM:  I believe we can get it done by

5     May 10, your Honor.

6          THE COURT:  Let's have that motion filed by May 10.

7     Let's have the opposition by June 10.  And let's have the

8     response by June 24.

9          All right.  And obviously to the extent there are any

10    discovery disputes again, the parties should take that up with

11    Magistrate Judge Fox.

12         Yes.

13         MR. ZISSU:  Your Honor, if we're finished with that

14    scheduling, I'd like to turn to another subject, if I may,

15    about settlement.

16         THE COURT:  Hold on.  Is everyone okay with that

17    schedule?

18         MR. OPPENHEIM:  I'm fine with the schedule, your

19    Honor.  I'm just trying to figure out how that, as a practical

20    matter, we're fine for the next two weeks of depositions.  The

21    question is do we hold off on the other depositions so that we

22    don't end up having to repeat them because this current

23    schedule is a fast moving schedule.

24         THE COURT:  Correct.  And I'm looking here again.  It

25    seems that fact discovery is due to be closed by June 17.  This

D4ILPEAC                          Conference

1    order was just issued on Monday.  The parties should take that

2    up with Magistrate Judge Fox.  It certainly seems, it very well

3    may be that that needs to be adjusted somehow, but the parties

4    should take that up with Magistrate Judge Fox.

5            I would certainly encourage the parties to do whatever

6    discovery you certainly can do now, and it very well may be

7    that discovery will need to be perhaps reopened at some point.

8            MR. OPPENHEIM:  I suppose we'll either need to agree

9    to extend it or, alternatively, agree that certain witnesses

10   will have to appear a second time to deal with additional

11   issues.

12           THE COURT:  That's correct.  And, again, I'm only

13   hesitant to do that, again, because I've referred this to

14   Magistrate Judge Fox for general pretrial supervision, and I

15   don't want to have conflicting things going back and forth.

16   He's in charge of setting the dates for discovery.  So, again,

17   obviously, the parties can take that up with Magistrate Judge

18   Fox.  Probably sent him a letter, joint status report letting

19   him know what happened here and see if the parties can agree to

20   something.  My sense is there probably won't be total agreement

21   on what to do, but perhaps there may be some sort of agreement

22   on some sort of brief adjournment of the discovery deadline.

23           But, yes, counsel.

24           MR. ZISSU:  Only to add that the versions of the three

25   books at issue, defendant's works, have not been available for

D4ILPEAC                         Conference

1    some time and they're no longer available since February.  So

2    that's one thing.

3            The second, the defendants are not looking to box the

4    plaintiff in with any gamesmanship in terms of what's necessary

5    to prepare for the case.  So that's all I have to say on that.

6            And I had wanted to raise another subject.

7            MR. OPPENHEIM:  All I'll say, I was prepared for

8    Mr. Zissu to say this.  As of last night, our clients could

9    still access the original works that are in the case.  And I'm

10   happy to hand up a screen shot if the Court wants to see and

11   Mr. Zissu wants to see.  But the statement that those works are

12   not being distributed anymore is just not true.

13           THE COURT:  Okay.  That's fine.  It's not necessary

14   for me to -- is there something you want me to do with this

15   information you're giving me now?

16           MR. OPPENHEIM:  No, your Honor.  But to the extent

17   that it colors your view on the Article III issue, I wanted the

18   Court to have a fair balance on the issue.

19           THE COURT:  All right.  That's fine.  There's

20   something else you wanted to raise, Counsel?

21           MR. ZISSU:  Yes.  Your Honor, last time we were here,

22   at the close of the discussion of the defendant's motion, at

23   that time asked the parties where they stood on settlement and

24   we had a discussion on that.  And when we went before

25   Magistrate Judge Fox originally with the schedule, he also

1   raised that topic.  And the parties were not ready at that

2   juncture to discuss settlement, although Magistrate Judge Fox

3   did say he would bet dollars to doughnuts that the parties

4   would reassess that as they go forward in the case and we

5   listened to him and it's common sense.

6           And we, for our part, we have reassessed and we think

7   that the case is now at a juncture where the defendants would

8   request that the parties go to mediation in the Southern

9   District.  And the reasons are that these books, the original

10  books that were targeted here, they are not available, and we

11  can demonstrate that in the motion.

12          And if that's true, what's left at least as to those

13  books is a question of money and what damages the availability

14  of those original works would have caused in the months that

15  they were available.  And money is, it turns out, money is

16  fungible.  And it's like the ballad in the song, old soldiers

17  never die, they just sometimes fade away.

18          I think if the parties, for example, look at the

19  monetary aspects of the case and present their analysis to each

20  other and to a mediator, I'm confident that that issue can be

21  resolved by the parties.

22          As to the new works, I think the time has come where

23  those works probably ought to be, apart from the motion, the

24  parties can address them.  The passwords that we've given to

25  the plaintiffs, they're not just abstruse thing.  That's the

D4ILPEAC                        Conference

1    form of electronic discovery of those works.  So they have been

2    available from the time they were created and as to how they

3    were created and so forth.

4            I think we're approaching at the point a crushing

5    period of discovery under the old schedule, under the current

6    schedule.  And the idea that the works keep evolving

7    day-to-day, that's just not true.  Our client is in the

8    business.  They don't change their product every day.

9    Sometimes there are changes in the software and the technology

10   and how you use it online, but the content of our client's book

11   is pretty well set right now in the form it's been since

12   February of 2013.  Otherwise, they couldn't offer it free of

13   charge to students.

14           So, plaintiff's works change too.  It's naturally in

15   publishing that they're in their ninth edition for two of the

16   works, sixth edition for another.  They'll have new editions.

17   We're not planning changes every day, and you can't change the

18   content of materials of this kind.  It takes, eight, nine

19   months.

20           So we do think that if everything is put on the table,

21   we're prepared to discuss in full the resolution of the case,

22   which I think would be better than litigating it if the parties

23   can resolve it.

24           THE COURT:  Okay.  Plaintiff have any position on

25   that?

1      MR. OPPENHEIM:  There was a lot said.  I'll just focus

2 on settlement piece.

3      We're happy to have a settlement dialogue, your Honor.

4 We've said from the beginning we're always happy to have such a

5 dialogue.  What we've asked for in order to have a dialogue on

6 the new works is even just for settlement purposes, give us

7 some sense of what the differences are between the migration of

8 the works or the evolution of the works, whatever you want to

9 call it, so that we know what it is we're talking about because

10 we have not -- we haven't.  We haven't sat down and done a

11 comparison.  We don't know what's there.  And we can't

12 reasonably have that settlement dialogue until we get that

13 comparison.  And it needs to be more than just kind of, oh, we

14 changed photographs and we shortened things.  We need more

15 detail than that.  And if we get that, I think a mediation is a

16 useful thing.  I don't know whether it will lead to settlement,

17 but we should do it.

18      THE COURT:  And where would you propose that you would

19 get this comparison from?  What form would this comparison

20 take?

21      MR. OPPENHEIM:  I presume that the defendants have

22 some -- they're in a position to either give us something

23 they've already created or can easily create.  And, again, I'm

24 not trying to get free discovery, but in order for us to have a

25 settlement dialogue, we need to understand that.

1       THE COURT:  And what's's defendant's position on that,

2  is defendant willing to provide that sort of information to aid

3  settlement?

4       MR. ZISSU:  Of course, yes, basically.  It's

5  complicated, but we certainly would work with them to let them

6  know what the changes have been.  On the other hand, they also

7  have to look at the works.  Otherwise, we'd be writing our own

8  ticket.  It would be an interactive process, and of course we

9  would make available to them what we can to facilitate that

10  process.

11       THE COURT:  Okay.  And are both parties amenable to,

12  in terms of settlement, there are different avenues the parties

13  can take.  The parties can try to work this out on their own;

14  the parties can avail themselves of the Court's mediation

15  program or a different mediation program; I can refer it to a

16  magistrate judge; I can hold a settlement conference myself --

17  all these options are available.

18       Do the parties have any preference in terms of how to

19  go about that?

20       MR. OPPENHEIM:  I think we're scheduled right now to

21  be before Magistrate Judge Fox with a settlement conference on

22  June 10.  We're fine proceeding before Magistrate Judge Fox.

23  If it were possible, and I mentioned this I think to the

24  defendants once before, I'd like to move that date just because

25  of a personal conflict but by a matter of days is fine.  We're

D4ILPEAC                              Conference

1    not trying to delay it.

2              He did reset it.  I'm sorry.  It's now been reset to

3    August 1.

4              We're happy to do it sooner before Magistrate Judge

5    Fox or somebody else.  It doesn't make a difference.

6              THE COURT:  And what's defendant's position?

7              MR. ZISSU:  We'd prefer it sooner, one.  And, two,

8    I've had good luck with the mediation program in this district,

9    particularly because the categories of lawyers that are made

10   available are sometimes, in terms of their experience, somebody

11   who's had in the copyright rubric of the potential mediators

12   would be what we would prefer.

13             THE COURT:  Okay.  So defendants have indicated they'd

14   prefer mediation.  What's plaintiff's position on that?

15             MR. OPPENHEIM:  Your Honor, that's fine.  That's fine.

16             THE COURT:  Then I guess what I propose possibly as a

17   practical aid to settlement is if we go forward with what we

18   have scheduled so far in terms of this motion to dismiss, and

19   we can certainly go ahead and go through that.  But my sense is

20   that lawyers tend to be litigious and in the motions, lawyers

21   will start saying, sometimes lawyers take little pot shots at

22   each other in the motion as well and it makes it a little more

23   difficult sometimes for the parties to switch into that

24   settlement mode.

25             It might make sense to hold off on the motion, let the

1   parties go ahead and exchange this information, have this

2   interactive dialogue and attempt mediation or settlement first,

3   and then we can come back, if settlement is not going to work,

4   we can come back and deal with the motion, or we can go ahead

5   and have the motion decided.  It doesn't matter to me.  But

6   that's just a concern that I have is, first of all, again, it

7   may make it more difficult to settle once the lawyers get back

8   into that kind of litigation mode.

9           And also, neither of you, I believe, are working for

10  free.  I don't believe either of you are doing this pro bono,

11  and that's going to start generating fees for your clients,

12  which also may make it more difficult to settle.

13          But let me hear from the parties on your position on

14  that.

15          MR. OPPENHEIM:  Your Honor, I have no objection to

16  deferring the motion to dismiss pending settlement conference.

17  What I wouldn't want to do is to stay the current plaintiff's

18  claims.  And actually this could work out I think well.  We go

19  forward, schedule the mediation.  We continue to litigate

20  plaintiff's claims.  If we settle, great, all done.  If we

21  don't settle, we'll probably be in a position to tee up to your

22  Honor summary judgment motions on plaintiff's claims in

23  September, and I believe that that will really move things

24  forward.

25          Either one of three things will happen at that point.

If the defendants win, as they think they will, then they'll

certainly win on their counterclaims and there's no need to

proceed with them.  If we win on our claims, as we think we

will, one of two things will happen:  either we'll be in a

better position to settle because your Honor will have informed

us both on the legal principles and how the legal principles

apply; or, alternatively, it will dramatically narrow what we

need to present to the Court on the counterclaims so that it's

a very short second stage of the case.

So I think with that idea, holding off on the motion

to dismiss would make sense.

THE COURT:  Defendant's position?

MR. ZISSU:  Your Honor, we think if we're going to

have settlement discussions, it doesn't make sense for us to go

forward with this phase of discovery, which is expensive to our

clients.  It's time-consuming, and it will be distracting from

the settlement effort.

I really think now is the time that we need, at least

temporarily, maybe have a cease fire so that we can really

devote our entire intention to getting rid of the case.  It

shouldn't be stayed so that they can take a whack at us for two

months in the hopes of narrowing the case while we're exhausted

with that.  It would remove part of the benefit, potential

benefit to us and I would think to them of resolving the case

and there is no more case to litigate.

D4ILPEAC                         Conference

1          THE COURT:  Okay.  And, again, let me make sure I'm

2     clear on this.  The parties seem to be in agreement that what

3     is needed in order to engage in meaningful settlement

4     discussions is this sort of interactive dialogue between the

5     parties.  And the discovery that's currently scheduled won't

6     really have any bearing on settlement discussions, is that

7     correct, or it certainly might be helpful, but it's not

8     necessary; it that true?

9          MR. OPPENHEIM:  The four depositions that are

10    currently scheduled, which is obviously a limited subset of all

11    the depositions that are going to go forward, I think, as far

12    as I know, relate only to the older works, so it won't help the

13    process.  I do think that the process of settlement in terms of

14    the information we need, I know Mr. Zissu talked about a

15    two-way street and, obviously, settlement is hugely a two-way

16    street.  But in the very first instance, we need something from

17    them.  We don't have the works.  We don't have a description of

18    what's different other than two sentences, and so we need -- in

19    the first instance, the ball is very much in their court.

20         THE COURT:  Okay.  I think defense counsel indicated

21    that he's willing to provide some of that information, wasn't

22    very specific as to how it was going to be provided, but

23    indicated that he's willing to provide that information and

24    work with you to do that.

25              Perhaps it may make sense to set a timetable here and

1    see if the parties can resolve this issue of understanding

2    where they stand in terms of the differences between the works,

3    if they can do that in the next two weeks, and perhaps give me

4    a joint status report, see where we are.

5          If the parties have some sort of agreement in terms of

6    at least where they stand, at least in terms of each other's

7    position on this, and if the parties are willing to move

8    forward with settlement, then we'll go ahead, refer it to

9    mediation at that point, if the parties think that makes sense.

10   How does that sound?

11         MR. ZISSU:  Well, it does make sense, so that's first.

12   There are two comments on it.  The works themselves are

13   available in the same way that all of the defendant's works

14   have been available, so they're not a mystery.  They have to be

15   compared and they have to be judged by the plaintiffs.

16         Second, we will facilitate that, of course.  We'll

17   talk to them about what the changes are made.  But then they

18   have to look at them and see what their views are and it's an

19   interactive process.  In terms of -- and we're prepared to do

20   that in the next two weeks.

21         We have these depositions.  We're not looking -- you

22   want to take these depositions, let's take these depositions

23   and finish that up.  But I think at that point, other than that

24   we should concentrate -- we're not trying to get any advantage

25   in the schedule in that way, but although I think it would make

1    sense to blow the whistle at this point or have a 60-day period

2    in which we settle it or not.

3        But the other -- my final comment is maybe we should

4    meet with a mediator and the mediator should also facilitate

5    and run that process so we can exchange what we have to with

6    the plaintiffs, show them what we can, then they have to look

7    what we've shown them.  They have to look at the works, which

8    they're not unknown or secret.  They're being used now in the

9    defendant's materials.

10        THE COURT:  Okay.

11        MR. OPPENHEIM:  I don't want drag down on too much

12   minutia here.  But, for instance, telling us we have to review

13   the works off a website, that's a very difficult way to review

14   thousands of pages.  We need a hard digital copy in order to be

15   able to do this.  And this is the kind of -- unfortunate have

16   to raise it with your Honor -- but this is the kind of not

17   meeting in the middle that we're having trouble with.

18        MR. ZISSU:  This is a conversation, with all due

19   respect, we should have with a neutral, with a mediator.  We're

20   not going to go to a mediator and stonewall; that would be

21   self-defeating.  So we're prepared to go forward.

22        THE COURT:  Okay.  So it seems it may make sense to

23   refer this case to mediation now and let the parties perhaps

24   should go ahead and try to work that out with the mediator.  I

25   don't think the parties, again, my sense is that the parties

1  right now are still firmly in this sort of litigation mode and

2  not in the settlement mode and perhaps by referring it to

3  mediator and letting some of that chill a little bit, the

4  parties will be able to kind of get into a more facilitative

5  mode and work these details out with the mediator and perhaps

6  save their clients on both sides a lot of extra money in terms

7  of some of this other information here.

8         So I think it makes sense to go ahead and refer this

9  to mediation.  It sounds like I guess just as a final matter,

10 again, what do the parties -- let me just decide this.  It

11 seems that it makes sense to -- perhaps these depositions

12 aren't going to really have any effect on the settlement,

13 correct, the depositions that are currently scheduled; is that

14 correct?

15         MR. OPPENHEIM:  They're just to inform the strength of

16 our underlying claims.

17         THE COURT:  It seems like we might as well hold off on

18 those depositions in the short term.  Let's go ahead and refer

19 this to mediation and see where we are.  And then when we come

20 back, if there is no settlement, then certainly we'll go back

21 to where we are today.  We'll finish up that discovery.  We'll

22 have this briefing schedule.  It will be different dates,

23 obviously.  We'll see where we are at that point.

24         MR. OPPENHEIM:  So we're staying all discovery, your

25 Honor?

1    THE COURT:  Let's stay discovery.  When I say all

2    discovery, I'm not talking about obviously this sort of -- not

3    technically discovery, this interactive communication between

4    the parties.  Obviously, I don't want to stay all discovery if

5    there's discovery the parties feel they need for this mediation

6    process.  Again, what the parties are discussing doesn't really

7    sound like discovery as much as just sort of conversation.

8         MR. OPPENHEIM:  I agree it's not discovery.

9         But just to be clear, your Honor, we object to this.

10   And, obviously, your Honor can set the schedule here.  But we

11   had a back and forth with the magistrate over what the schedule

12   should be.  The defendants wanted to push the schedule out much

13   further.  We tried to reach a compromise.  Now they're kind of

14   skinning the cat a different way, your Honor, in fairness.

15        But if so long as it's a very short period where we're

16   intensively working towards settlement, fine.  I would hate for

17   this to extend out more than a couple weeks.

18        THE COURT:  I understand.  This is just so that the

19   parties can engage in mediation, so the parties can engage in

20   settlement discussions.  And hopefully that will be productive.

21   And if it's not, obviously, we'll move forward as expeditiously

22   as we can.  So I'll refer this to mediation.

23        And should we set a control date or a status

24   conference date 60 days out?

25        MR. OPPENHEIM:  I'd rather it be much sooner than

1        that, your Honor.

2                THE COURT:  We can, getting into some of the minutia

3        here, if the parties will be able to exchange these

4        documents -- again, it seems there's not total agreement

5        between the parties right now in terms of how this interactive

6        process is going to take place.  And if they're going to wait

7        for the mediator, to meet with a mediator to determine that, it

8        may push things back a bit.  We can certainly have -- I guess

9        there's no harm in having a status update sooner than that and

10       we'll see where we are.  So why don't we have a joint status

11       report 30 days from now and see where we are.

12               MR. ZISSU:  Your Honor, I thought the 60 days would

13       have been fine and I'll tell you why.  Mr. Oppenheim has

14       detailed for your Honor the complexity of having to review new

15       materials, including in discovery.  The idea that somehow

16       mediation would be over in 30 days is not realistic.

17               We have no problem with an update.  We're going to go

18       forward.  We are very much in favor of it.  I've tried to make

19       that clear today.  And it would be self-defeating in all ways

20       in terms of progress of the case for mediation or settlement to

21       hold back on facilitating their review of these things and

22       explaining in the settlement/mediation context exactly what our

23       client has done with its works.  It can be done and it will be

24       done, your Honor.

25               THE COURT:  All right.  And, again, my intention is

1   not to demand that the mediation necessarily be completed in 30

2   days.  It would be great if it were.  I just want on update,

3   just a joint status report -- parties don't need to come to

4   court -- just a joint status report in 30 days so we see where

5   we are, and in case there are any snafus or issues, we can deal

6   with that then.

7           MR. OPPENHEIM:  Your Honor, in my experience, having

8   settled, of course, most of the cases that we handle as

9   litigators, I found nothing compels settlement more than

10  ongoing litigation.  So I have great concerns when we start

11  staying discovery that, notwithstanding defendant's comments

12  about wanting to settle, that this is an opportunity for them

13  to continue to inch into my client's market with an infringing

14  product while in the name of settlement.  But hopefully I'm

15  wrong on that.

16          THE COURT:  I understand.

17          MR. ZISSU:  I have to point out the inconsistency.

18  The plaintiffs have said --

19          THE COURT:  That's not necessary.

20          MR. ZISSU:  These books aren't in the case and now

21  they're concerned they are in the case and they're being sold,

22  so this is why we should go now to mediation.

23          THE COURT:  What's the status conference date, Tara,

24  for status report date?

25          THE DEPUTY CLERK:  May 17.

1          THE COURT:  So let's have a joint status report

2     May 17.  We'll refer this to mediation.

3          Anything else from plaintiff today?

4          MR. OPPENHEIM:  No, thank you, your Honor.

5          THE COURT:  Anything else from defendant today,

6     anything else from defendant today?

7          MR. ZISSU:  I don't think so.

8          THE COURT:  Okay.  Thank you very much.

9                              o0o

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25